IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IBN ZAKARIYA MUHAMMAD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-1726-M |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| SUPERVISION AND CORRECTIONS | § | |
| DEPARTMENT | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's *Standing Order of Reference*, filed January 9, 2007, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court is Defendant's *Motion to Dismiss,* filed April 19, 2007.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court recommends that the defendant's motion be **GRANTED**.

**I. BACKGROUND**

This case represents the consolidation of two separate actions.[1] In the first action, filed on November 31, 2003, Plaintiff brought claims of discrimination, retaliatory action, Civil Rights violations, and deprivation of employment opportunity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1988, against Defendant,

---

[1] Civil Action No. 3:03-CV-1726-M and Civil Action No. 3:07-CV-43-M.

Dallas County Community Supervision and Corrections Department ("DCCSCD"). (Pl.'s First Comp. at 1, 3-4). On November 29, 2004, the District Court granted the defendant's (DCCSCD) motion to dismiss the §§ 1981 and 1988 claims on the basis of Eleventh Amendment immunity. *Memorandum Opinion and Order, Muhammad v. Dallas County Cmty. Supervision and Corr. Dept. (DCCSCD)*, No. 3:03-CV-1726-H, at 8 (N.D. Tex., issued Nov. 29, 2004). The District Court, *sua sponte,* subsequently dismissed Plaintiff's remaining Title VII claim, and as this represented the last live claim, dismissed the full lawsuit. *Muhammad v. Dallas County Cmty. Supervision and Corr. Dept. (DCCSCD)*, 2005 WL 742899 (N.D. Tex. March 31, 2005). Plaintiff appealed the dismissal, and on March 14, 2007, the Fifth Circuit reversed and remanded on the dismissal of the Title VII claim; the Fifth Circuit did, however, affirm the dismissal of the §§ 1981 and 1988 claims. *Muhammad v. Dallas County Cmty. Supervision and Corr. Dept.*, 479 F.3d 377 (5th. Cir. 2007).

On January 9, 2007, Plaintiff filed a second complaint against Defendant seeking relief under the same federal statutes, including §§ 1981 and 1988, based on actions which occurred after the dismissal of the first suit. (Pl.'s Second Comp., at 1, 3-4). Plaintiff also alleged discrimination based on age and religion in his second complaint. *Id.* at 3.

On March 22, 2007, following the Fifth Circuit's decision to reverse and remand Plaintiff's Title VII claim in the first suit, these two suits were consolidated. On April 19, 2007, the defendant moved to dismiss Plaintiff's §§ 1981 and 1988 claims in the second suit. Plaintiff filed a response in opposition on May 9, 2007, to which Defendant replied on May 24, 2007. The issues have been fully briefed and are ripe for consideration.

## II.  STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's §§ 1981 and 1988 claims pursuant to FED. R. CIV. P.

12(b)(1). (Def. Mot. at 1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Giving first consideration to rule 12(b)(1) motions "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F.Supp. 876, 878 (N.D. Tex. 1998). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id.* (citation omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the

burden of proof that jurisdiction does exist." *Rodriguez*, 992 F.Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citations omitted).

As neither party has attached evidence to support their contentions, this motion presents a facial attack, and the allegations in the second complaint are presumed to be true.

### III. ANALYSIS

Defendant asserts Eleventh Amendment immunity as an entity of the state and cites the District Court's determination in the first suit that Plaintiff's §§ 1981 and 1988 against DCCSCD were barred by such immunity. Relying on *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986) (holding that an adult probation department was an arm of the state within the meaning of the Eleventh Amendment and that federal courts lacked subject matter over the plaintiff's § 1983 claims against it), the District Court found that DCCSCD was an arm of the State and was therefore entitled to Eleventh Amendment immunity. *Muhammad*, No. 3:03-CV-1726-H, at 7-8.

Plaintiff responds that the District Court's previous decision is not proscriptively applicable because subsequent amendments to TEX. GOV'T CODE Chapter 76 (Vernon 2007) now make it uncertain whether DCCSCD is an arm of the state. (Pl.'s Resp. at 1). Specifically, Plaintiff argues that amendments to Chapter 76 leave the statute unclear as to "whether the defendant receives its funding from the [s]tate, whether the defendant is controlled by the state, or whether defendant only handles local issues." *Id.* at 2. For these reasons, Plaintiff contends that full reliance on *Clark* is no longer proper. *Id.* Plaintiff also contends that "the defendant has failed to demonstrate that it is an arm of the state by providing any proof." *Id.* at 1-2. Thus, the question for this Court is whether DCCSCD is still entitled to Eleventh Amendment immunity in light of the 2005 Amendments to Chapter 76.

Fifth Circuit case law on Eleventh Amendment immunity for state entities is well-established. In federal courts, § 1981 claims against a state entity are barred by the Eleventh Amendment. *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1068 (5th Cir. 1981). In fact, Eleventh Amendment immunity deprives courts of subject matter jurisdiction. *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9, 288 (5th. Cir. 1999). As the District Court originally noted, the question of whether "DCCSCD is entitled to Eleventh Amendment immunity turns on its status as an arm of the state." *Muhammad*, No. 3:03-CV-1726-H, at 6. To make that determination, the Fifth Circuit has traditionally considered six factors:

> "(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property."

*Vogt v. Board of Comm'rs of the Orleans Levee Dist.,* 294 F.3d 684, 688 (5th Cir.), cert. denied, 537 U.S. 1088 (2002); *see also*, *Clark*, 798 F.2d at 744-45.

The first inquiry is whether the statutes and case law still characterize DCCSCD as an arm of the state.[2] Section 76.002 of the Texas Government Code requires state district judges to establish community supervision and corrections departments and to "approve the department's budget and community justice plan." TEX. GOV'T CODE § 76.002(a). This portion of § 76.002 was unaffected by the 2005 Amendments. *Id.* Two changes were made to § 76.002 during 2005: (1) judges were no longer required or permitted to employ personnel beyond hiring the director of the community corrections department; and (2) judges were no longer entitled to participate in the direct

---

[2] There does not seem to be any case law directly on point after 2005.

management of the department. TEX. GOV'T CODE § 76.002. In addition, new oversight by the state auditor was added "to examine and audit accounts, records, receipts, and expenditures of a department." TEX. GOV'T CODE § 76.004(g)(3). These changes indicate a more limited role for state district judges in the managerial and operational aspects of these departments. However, they do not overshadow the district judges' ongoing responsibility for establishing the department, approving its recurring budget and operational plans, and choosing the director of the department. Accordingly, the Court finds that DCCSCD is still characterized as an arm of the state despite these changes to the statute.

The second inquiry under the six factor analysis concerns the source of funding for the entity in question. *See, Vogt*, 294 F.3d at 689; *Clark*, 798 F.2d at 744. Here, Plaintiff claims that changes to Chapter 76 now make DCCSCD's source of funding unclear. (Pl.'s Resp. at 2). There were not, however, any changes made to the statutory funding provisions in 2005 or thereafter.[3] *Compare*, TEX. GOV'T CODE § 76.007-10 (Vernon 2007) and, TEX. GOV'T CODE § 76.007-10 (Vernon 2005). This factor thus provides no basis to question the District Court's initial determination in this case that *Clark* is directly applicable.

The third inquiry pertains to the degree of local autonomy enjoyed by DCCSCD. *See Vogt*, 294 F.3d at 689; *Clark*, 798 F.2d at 744. Here, Plaintiff argues that changes to Chapter 76 leave it unclear whether DCCSCD is controlled by the state. (Pl.'s Resp. at 2). The balance between local and state control has changed somewhat since the 2005 amendments to Chapter 76. For example, the department is now vested with the power to "authorize expenditures of funds provided by the division to the department for the purposes of providing facilities, equipment, and utilities for

---

[3] In fact, DCCSCD can still accept funds from any source. TEX. GOV'T CODE § 76.010. State funds are still allocated to DCCSCD and the state (through the district judges) must still approve any proposed budget. *Id.*

community corrections facilities or state jail felony facilities" subject to certain oversight provisions. TEX. GOV'T CODE § 76.010(c). This marks a change from 2005, when district judges were vested with that power. TEX. GOV'T CODE § 76.010(c) (Vernon 2005). In addition, any persons employed under the current statute are employees "of the department and not of the judges or judicial district," which was not the law prior to 2005. *Compare*, TEX. GOV'T CODE § 76.004(b) (Vernon 2007) and, TEX. GOV'T CODE § 76.004(b) (Vernon 2005). These changes, however, are relatively minor and are militated against by new oversight from the state auditor. *See*, TEX. GOV'T CODE § 76.004(g)(3). Thus, it appears that the Amendments from 2005 provide more local control of DCCSCD, but fall well short of showing that DCCSCD is an autonomous local entity. As noted in *Clark*, the district judges' power to establish such entities in the first instance (which was unchanged by the 2005 Amendments) undermines any finding of local autonomy. *See Clark*, 798 F.2d at 744.

The fourth, fifth, and sixth inquiries involve a determination of whether the entity in question concerns itself with local as opposed to statewide concerns, can be sued in its own name, and can hold property in its own name, respectively. *See Vogt*, 294 F.3d at 689; *Clark*, 798 F.2d at 744. There are no changes to the applicable Code provisions that govern these three factors. Thus, there is no reason to revisit the District's Court previous determination of DCCSCD's entitlement to immunity on the basis of these unchanged factors.

Viewing all six factors in total, the Court finds that DCCSCD's entitlement to Eleventh Amendment immunity is unchanged by the 2005 Amendments to Chapter 76 of the Texas Code. Accordingly, Plaintiff's claims against the Defendant under 42 U.S.C. §§ 1981 and 1988 should be dismissed for lack of jurisdiction.

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Dismiss* be **GRANTED**.

**SO RECOMMENDED** on this 8th day of August, 2007.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE